FINKELSTEIN & KRINSK LLP
John J. Nelson. (SBN 317598)
jjn@classactionlaw.com
501 West Broadway, Ste. 1260
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

*Attorneys for Plaintiff*
*and the Putative Class*

## IN THE UNITED STATES COURT FOR

## THE NORTHERN DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| **ROBERT WEISS**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**AS AMERICA, INC. d/b/a AMERICAN STANDARD BRANDS**, a Delaware corporation,<br><br>Defendant. | Case No: 3:21-cv-06354-JCS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**1.     VIOLATION OF CAL. BUS. & PROF. CODE § 17500, *et seq.*;**<br><br>**2.     VIOLATION OF CAL. CIV. CODE § 1750, *et seq.*;**<br><br>**3.     VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.***<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Robert Weiss  ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this class action complaint against Defendant AS America, Inc. d/b/a American Standard Brands ("Defendant") and hereby alleges as follows:

## I.     **INTRODUCTION**

1.     Plaintiff brings this action on behalf of himself and the putative class against Defendant to recover damages they sustained as a result of defective toilets manufactured and sold by Defendant. Specifically, Defendant's Champion brand toilet (the "Class Product") contains an improperly designed and manufactured gasket and/or flush valve assembly that prematurely fails and necessitates frequent repairs and constant monitoring to prevent water waste. The purpose of the gasket and/or valve assembly is to prevent water in the holding tank from draining until the

user flushes the toilet. In a relatively short period of time, the gasket and/or valve assembly may blister and fill with water, preventing a watertight seal. The blister on the seal creates a leak path, allowing water to leak down the flush valve mechanism causing unanticipated water loss and increased water bills, oftentimes without the owner knowing of the excess water consumption until they receive an expensive water bill. The leak path can also cause the toilet to periodically flush on its own, also known as "ghost-flushing." The defective Class Product caused Plaintiff to sustain damages which include, but are not limited to, repair or replacement costs, increased water bills, diminution in value of the toilet, overpayment at the time of purchase, and other related costs.

2. Defendant markets and advertises the Class Product as having the WaterSense certification that promises that the toilets will minimize consumption of water and help consumers maintain lower water bills and conserve water, a feature that is of particular importance to California consumers during the state's historic drought. Unfortunately for consumers who choose to purchase a Class Product, the gasket and/or valves equipped in the Class Product water tank are made from a material that is not suitable for the task of maintaining a watertight seal and allows water to trickle through unbeknownst to the consumer. The gasket itself is a rigid material that often fails to maintain a watertight seal. Additionally, the gasket, when submerged in water as it is intended to be, will blister over time and absorb water, preventing a watertight seal and leading to the frequently reported issue of excessive water consumption or ghost flushing.

3. Defendant also is famous for advertising the Class Product as having the ability to flush a bucket of golf balls without issue while maintaining minimal water consumption. These representations are intended to convince consumers that despite the Class Product's minimal water usage, the toilet is capable of performing well in excess of that which a toilet would need to flush. However, the Class Product fails to live up to this representation and many consumers report that not only dopes the toilet consume water in excess of Defendant's representations, it also fails to deliver the promised flushing performance.

4. Even though Defendant is aware of the defect, it has not changed the design of the flush valve mechanism or the composition of the gasket to ensure that the Class Product matches the affirmative representations made by Defendant on the Class Product label, throughout its

television and internet marketing, and in Defendant's in store promotional materials. Consequently Plaintiff bring this Class Action Complaint to recover the damages sustained as a result of the defective Class Product and to prevent future harm to consumers and California's water resources by compelling corrective action on the part of Defendant.

## II.   JURISDICTION AND VENUE

5.   This Court has original jurisdiction over this matter pursuant to 28 U.S.C.§ 1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which any member of the class of plaintiffs is a citizen of a state different from any defendant.

6.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because this Court has personal jurisdiction over Defendant. 15.   The   Court   has personal jurisdiction over Defendant because the Product is advertised, marketed, distributed, and sold throughout California; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in California; Defendant is authorized to do business in California; and Defendant has sufficient minimum contacts with California and/or otherwise has intentionally availed itself of the markets in California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant's activity within California is substantial and widespread. At all relevant times hereto, Defendant was a foreign corporation duly authorized to conduct business in the State of California.

## III.   PARTIES

### Plaintiff

7.   Plaintiff Robert Weiss ("Plaintiff") is an individual and at all times relevant hereto has been a resident of Contra Costa County and a citizen of California. Plaintiff purchased three American Standard made Champion 4 toilets for his home. Prior to purchasing the Class Products, Plaintiff researched the toilets online and reviewed Defendant's promotional materials, including those on the Class Product label and throughout the Lowes home improvement store in Concord, California where he ultimately purchased his Class Products. Plaintiff's CLRA Venue Declaration

is attached hereto as Exhibit A. Plaintiff specifically sought out a toilet that featured minimal water consumption as this would not only help him maintain a low water bill but would also allow him to do his part to conserve water during California's historic drought which has left reservoirs across the state at perilously low levels. Moreover, Plaintiff saw Defendant's YouTube advertisement where the Class Product is featured as flushing, without issue, an entire bucket of golf balls. Plaintiff was impressed by the combined advertised features of minimal water usage and strong flushing power. Plaintiff read and relied on Defendant's representations when deciding whether to purchase the Class Product. Convinced that the Class Product would perform as advertised, Plaintiff purchased the Class Products and had them installed in his home.

8.      Unbeknownst to Plaintiff, the gasket and or flush valve mechanism was inherently defective from the time it left Defendant's possession and, soon after installation, began to slowly leak water through what should have been a watertight gasket and valve assembly. At the same time, the Class Product did not exhibit the outsized flushing power that Defendant promised and failed to even evacuate liquids from the bowl. Plaintiff was initially perplexed by this failure of the Class Product to perform as advertised but, after much investigation, eventually noticed that the water levels in the toilet tank would drop roughly an inch and a half a day even though no one had used or interacted with the Class Product during that time.

9.      Once Plaintiff had identified that the toilets' failure to flush as advertised was the result of water seeping through the gasket and/or valve assembly, he contacted Defendant and asked that they remedy the issue. Instead, Defendant sent three sets of new gaskets and instructed Plaintiff to effect the repairs himself. This required Plaintiff to remove the valve assembly, extract the gaskets, and then replace the gaskets and valve assemblies. This is a time consuming and technical process and Defendant refused to pay for a professional to fix the Class Product.

10.     Within a few months of Plaintiff's repair, the new gaskets began to fail, causing excess water consumption, particularly as some of the Class Products were installed in areas of the home seldom used by Plaintiff or his wife. Plaintiff again contacted Defendant and let them know of the issues he was experiencing despite his installing the new gaskets. This time, Defendant sent out three sets of entirely new valve assemblies and instructions as to how to install them in his

malfunctioning toilets. The instructions required that Plaintiff separate, lift, and remove the entire water tank from the toilets in order to replace the flush valve assemblies. When Plaintiff saw that this process was even more physically and technically demanding then the installation of the gaskets, he asked that Defendant send a plumber to his home to conduct the necessary repairs. Defendant refused. Absent assistance from Defendant, Plaintiff attempted the repairs on his own and, in the process of trying to remove a stuck 4-inch diameter nut, he was struck in the ribcage by the wrench and likely fractured a rib. Plaintiff suffered soreness and tenderness in the area for several weeks thereafter.

11.    Had Plaintiff known that his purchase of the Class Product would result in wasted water and necessitating hours of his own time learning how to repair and replace gaskets and flush valve assemblies, he either would not have purchased the Class Products or certainly would have paid less for them. Given the multiple failures of the Class Product gaskets and/or valve assemblies Plaintiff regularly checks the toilets to ensure they have not failed for a third time.

12.    Plaintiff would consider purchasing a Class Product in the future if he could believe that the Class Product conformed with the representations on the label and those made throughout Defendant's marketing and promotional efforts.

**Defendant**

13.    Defendant AS America, Inc. d/b/a American Standard Brands is a nationally recognized designer, manufacturer, and distributor of plumbing fixtures incorporated in Delaware and headquartered at 1 Centennial Ave, Piscataway New Jersey 08854. The company was initially founded in 1875 as the Standard Sanitary Manufacturing Company and over the last 140 years, consumers have come to recognize American Standard as a premium and reputable brand. Throughout its marketing statements and promotional material Defendant repeatedly emphasizes that it "effectively deliver[s] water saving products" and that its products are the result of "quality and innovation," which is why they are found in 60% of American residences[1].

14.    Defendant designed, marketed, and distributed the Class Product throughout California and nationwide. Defendant knew of the propensity of the Class Product to prematurely

---

[1] https://www.americanstandard-us.com/about/company-info

fail, that it did not conserve water as promised, and that it would not exhibit the flushing power promised by Defendant but refused to correct the Class Product labels or redesign the Class Product to conform with Defendant's affirmative representations. Defendant so refused because of the substantial costs involved and the potential loss of sales that would result from conforming the affirmative representations of the Class Product to the qualities and characteristics known by Defendant. On information and belief, sales of the Class Product throughout California have resulted in millions of dollars in profit to Defendant at the expense of California consumers and California's water resources.

## IV.   SUBSTANTIVE ALLEGATIONS

15.     Defendant manufacturers, markets, and distributes the Class Product throughout California and Nationwide. As part of its marketing efforts, intended to increase sales of the Class Product, Defendant represents that the toilets are certified for "high performance and water efficiency." Moreover, Defendant advertises that the American Standard brand prioritizes sustainability and "work[s] to reduce our environmental impact[2]." While representing its focus on sustainability and the efficiency of its products, Defendant simultaneously advertises the flushing power of its toilets. One prominent and well-known advertisement that Defendant posts on YouTube and which was viewed by Plaintiff, features a demonstration of the purportedly superior flushing power of the Class Product. This is conveyed to consumers by demonstrating that the toilet can flush an entire bucket of golf balls without issue. In conjunction with the water saving features of the toilet, this marketing conveys a powerful impression on consumers.

## The Flush You Can Trust.
## Virtually Clog-Free.

Innovation is what sets the Champion toilets apart from other brands. With superior flushing performance, the Champion is virtually clog-free. Water-saving high efficiency toilets are available to help save water and money.

---

[2] https://www.americanstandard-us.com/about/sustainability



16.     Defendant also crafts the marketing statements and promotional material for the retail stores that sell its products, like Lowes, Home Depot, or Amazon.com. For example, Lowes displays the following representations regarding the Class Product on its website, calling it a "powerful high-efficiency toilet that conserves water" and that it is designed for "minimal maintenance:"

**OVERVIEW**

When flushing power is foremost, the Champion 4 White WaterSense Elongated Toilet from American Standard offers outstanding performance in the busiest household. This powerful, high-efficiency toilet conserves water, using just 1.28 gallons of water (4.8 lpf) to clear the bowl in a single flush. No more second flush to be sure the bowl is clean. Designed for comfort and minimal maintenance, the Champion 4 is an elongated, chair height style with slow-close seat, bowl-scrubbing PowerWash Rim, and EverClean surface.

- POWERFUL FLUSHING ACTION ensures removal of waste with a single flush
- POWERWASH RIM uses pressurized water to scrub the bowl with every flush
- EVERCLEAN antimicrobial additive fights stains on the surface
- Champion flushing system produces a fast, powerful flush
- Largest siphonic trapway, 4-in. flush valve, and best MaP (Maximum Performance) score in the industry
- Includes all tools needed for easy installation and can be hand tightened
- Includes slow-close seat, wax ring, and flange bolts
- Meets ADA requirements
- Lifetime warranty on chinaware, 10 year warranty on all mechanical parts, and 1 year warranty on seat

[ ] Installation Manual PDF          [ ] Dimensions Guide PDF

17.     Unfortunately for consumers like Plaintiff who view and rely on these representations when making their purchasing decisions, the Class Product ends up consuming more water than competitors because when the gasket or valve assembly fails, water can leak for extended periods of time without detection. Additionally, the representations concerning flushing power are false given the propensity of the gaskets and/or valve assemblies to fail. Finally, Defendant is well aware that the Class Product is not a "minimal maintenance" product. Plaintiff not only had to engage in repeated repairs of his brand-new product, using his own time and energy, but he is forced to continually monitor them to ensure that they do not fail yet again.

**Defendant has Long Known of the Propensity of the Class Product to Fail**

18.     Defendant has long known that consumers will experience a failure of the Class

Product gasket and/or valve assembly but conceals this knowledge from consumers and continues to represent the Class Product as having characteristics that they do not have. Defendant is on notice of the failure of the Class Product to perform as advertised via consumer complaints left on websites and retail stores that it monitors, warranty requests, and reports of consumer disappointment from retail stores that carry the Class Product.

19.     On Lowes.com purchasers of the Class Product have long complained of the toilets propensity to leak through the gasket and/or valve assembly and Defendant often interacts with and responds to these reviews. For example, in June of 2017 a purchaser left the following review to which Defendant responded:

20.     Since then, purchasers from Lowes have left complaints concerning the same point of failure and those complaints continue to the present. The following are a small sample of complaints left on Lowes.com, which Defendant monitors:

**Blue seal leaks after a short time**

★★☆☆☆

Purchased this toilet last year and need to replace blue seal on the inside of tank. It is leaking and causing "ghost flushing". American Standard is aware of this faulty seal. Read the reviews on American Standards website, I would not purchase again.

✖ Would Not Recommend

👍 (2)     👎 (0)     💬 (1)     🚩 Report

> Thank you for the rating of our product. We apologize for the inconvenience that you experienced. If you ever need any assistance please contact our Customer Care Tech Team at 800-442-1902. Sincerely, American Standard Customer Care Tech Team
>
> By AmericanStandardBrands on June 9, 2017

**Worse Purchase Ever Made**                                                                  Misti

★☆☆☆☆                                                                                                      June 22, 2018

It was advertised that it would "Flush a Bucket of Golf Balls. That led me to believe that it had a powerful flush process. Well, I have never been so disappointed in a product in all my life. It won't even flush one little piece of toilet paper without holding the handle down until it flushes all the way. I bought this about 1 1/2 years ago. I see they have taken out the advertising about the golf balls. It definitely would have gone back if I not hired a plumber to install it at the cost of $125. I guess I'm stuck with it. This is a terrible product, unless it has been improved tremendously. It doesn't even deserve 1 Star.

— Read Less

✖ Would Not Recommend

👍 (7)     👎 (2)     💬 (1)     🚩 Report

> Misti, thank you for your review. We are sorry to hear of the flushing issue. There can be many issues causing this. Please contact us directly through the American Standard website "Contact Us" located at the bottom of our home page so we can assist you. Sincerely, American Standard Tech Team
>
> By AmericanStandardBrands on June 25, 2018



**Beware**

★☆☆☆☆

Trip
March 4, 2019

I have two in my house for the last five years.... and the flush is fine and doesn't clog.... But a well documented issue of the internal flush mechanism leaks and I ended up with a $500 water bill more than once.... American Standard knows about the issue because they will ship you replacement seals the first time if you have your receipt..... Then you will be replacing these seals the rest of your life by ordering them at $8 each, if they are in stock... I haven't found any one that can replac...

**+ Read More**

❌ Would Not Recommend

👍 (7)   👎 (0)   💬 (1)   🏳 Report

Trip, thank you for your review. We apologize for the inconvenience that you experienced. Please contact us directly at 800-442-1902 and reference your review so we can assist you. Sincerely, American Standard Tech Team

By AmericanStandardBrands on March 8, 2019

21. Additionally, in the Q&A section of the Lowes.com website it is apparent that the issue persists to the present despite Defendant's awareness:

**Anybody else experiencing a leak from the tank to bowl connection? 2 green gaskets 2 new rubber bolt gaskets, still leaks! Haven't even used it yet!**

Answer

Anonymous on August 27, 2020

Same issue here, out of the box and keeps leaking my plumber came twice already and cant do anithing else, how can i get replacemet?

By phernandez78202 on March 18, 2021

👍 (2)   👎 (0)   🏳 Report

Yes - Did anyone figure this out? Wasted lots of time trying to figure this out. Not sure what needs to be done.

By Andrew on February 2, 2021

👍 (2)   👎 (0)   🏳 Report

Same issue right out the box. Everything is installed correctly and it leaks at tank to bowl gasket. Can't tighten any more. What is the solution?

By CraigP on December 30, 2020

👍 (3)   👎 (0)   🏳 Report

Hello, thank you for the feedback on this product and we apologize for the experience you have had with this product so far. It is not very common for these products to have problems right out of the box. As the manufacturer, we are very interested in supplying consumers with a quality product that delivers the expected performance. Anytime we hear problems encountered in the use of one of our products, we want to get involved and resolve the difficulties the best we can. We appreciate you taking the time to share this feedback with us. We would like to connect with you to learn more about your experience to find a way to help! Please visit the American Standard Website, and email us directly through the "Contact Us" section. Your American Standard Consumer Connection Team.

By AmericanStandardBrands on August 28, 2020

22. Lowes is not the only retailer that receives complaints from aggrieved consumers. Amazon.com, on which Defendant maintains a storefront also contains significant reports, dating back years, from consumers frustrated with the performance of the Class Product:

Si P.

★☆☆☆☆ **Lasts less than 2 years**
Reviewed in the United States on October 3, 2017
Size: Pack of 1 | Verified Purchase

I don't use toxic cleaners or put anything in my toilet tank. The seal in my toilet only gets exposed to water, which is utility water. I am extremely dissatisfied that the material in these seals cannot hold up to the limited chlorine content of "city water." In less than 2 years, the seal will develop bubbles along the edges, causing the tank to slowly drain and make the toilet run.
I also wonder if/when these will no longer be produced since I can only find them online now. Makes me wish I'd went with a cheaper toilet that just uses standard flush valves. I've had my toilet 7 years and have gone through 4 seals in that time. I'm planning on trying the Korky brand next since it at least claims to be chemical resistant.

parrotale

★☆☆☆☆ **HORRIBLE!**
Reviewed in the United States on April 28, 2018

Bought two of them 4 years ago, wanted the taller toilets. Am willing to pay dump fees to rid myself of them. Bad design on the flush valve. A. S. Youtube video shows how to replace the flush valve. Start with disconnecting and removing the entire tank from the bowl. Pathetic! Oh, keep your receipt, that way A.S. Will send you new gaskets on a regular basis because you'll need them, often. When it does work, they do not scour well.



Ronalee Alexander-Frado
★★☆☆☆ **After installing the leaking seemed to be gone...now 2 days later it is back**
Reviewed in the United States on December 19, 2020
Size: Pack of 1 | Verified Purchase

Unclear as to why a set of seals would be problematic. Toilets are always a dreaded maintenance item. The replacement was much less labor intensive than I have done in the past, but when the water starts to come on after no use after a few days, what the heck is that about? I used the specific model number from American Standard, followed the instructions, now getting the "running" water thing again.
What the heck is that about? How long should it be expected to be good for?

23.    And again, the Amazon.com reviews show that this problem persists to the present as demonstrated by this July 2021 complaint:

Connie M.
★★☆☆☆ **Short life span**
Reviewed in the United States on July 17, 2021
Size: Pack of 1 | Verified Purchase

Can't say whether the design flaw is due to the gasket or the stool, but I do know that it's time to call the plumber again. He has replaced this gasket five times since January 2020, twice in one stool and three times in a second one. One of the stools has recently started ghost flushing once again, less than 6 weeks since the last replacement. Our experienced plumber stated that the stool was poorly designed and he would never suggest that anyone purchase one like it. When you add the cost of the replacement part to the plumber's recurring fees, I'm beginning to think that it's time to replace both stools. This will be our last effort.

24.    The foregoing comprise only a small sample of the overall complaints received by Defendant. Defendant is also on notice of the issues complained of herein through their own pre-release design and testing, monitoring of consumer complaints, trade publications and blogs, reports from retailers, and an unusually high number of warranty requests. Despite this knowledge, Defendant continues to make false and deceptive affirmative representations, omit facts of which it is aware and which are material to consumers, and refuses to field durable, properly designed gaskets and/or valve assemblies to ensure the Class Product conforms to the representations on the label and consumer expectations.

**Tolling of the Statute of Limitations**

25.    Defendant has concealed from discovery the material facts identified herein by repeatedly affirming its representations as to water conservation, efficiency, minimal maintenance, and the Class Product's flushing power by denying knowledge of the issue when consumers report a failure of the gasket and/or valve assembly and by performing illusory repairs by replacing failed gaskets and/or valve assemblies with identically similar components that Defendant knows will also fail.

26.    Moreover, even through the exercise of ordinary diligence, Plaintiffs and the other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Defendants failed to disclose material information within its knowledge about the propensity of the Class Product to prematurely fail.

27.    Because all or substantially all of the gaskets and/or valve assemblies on Champion

Toilets are defective in design and/or manufacture and are substantially certain to fail before their expected lifespan, Plaintiff and members of the Class are entitled to damages in amount to be determined at trial and an order enjoining Defendant from continuing its false and deceptive acts and omissions.

## V.   CLASS ACTION ALLEGATIONS

28.    Plaintiff realleges and incorporate herein all previous paragraphs of this Complaint.

29.    Plaintiff brings this action on behalf of himself and as a class action under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, seeking damages and injunctive relief pursuant to California law on behalf of the following class ("the Class"):

> All persons or entities residing in California who purchased a Champion model toilet manufactured by Defendant AS America, Inc. or its subsidiaries or affiliates within the applicable statute of limitations. Excluded from the class are Defendant, its officers, employees, agents, and representatives.

Plaintiff reserves the right to amend the Class definition prior to or after any class is certified by the Court.

30.    Plaintiff does not know the exact size of the Class however Plaintiff believes that there are at least tens of thousands of individuals in the Class. The members of the Class are so numerous that joinder of all members is impractical.

31.    Class members are identifiable from information and records in their possession and in the possession of Defendant.

32.    Plaintiff's claims are typical of the claims of other members of the Class, and Plaintiff will fairly and adequately protect the interest of the Class. Plaintiff's interests are coincident with, and not antagonistic to, other members of the Class.  Plaintiff have retained competent counsel experienced in the prosecution of class action litigation.

33.    Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. These common questions include, but are not limited to:

> a.    Whether the Class Product suffers from a defective gasket and/or valve assembly, causing damage to the owner including, but not limited to, repair and replacement costs, plumbing costs, significant water loss and increased water bills, and a diminution of value when compared to its marketed condition;

b.      Whether Defendant knew or had reason to know that Plaintiff and other members of the Class purchased the Class Product and the flush valve mechanism to effectively and reliably seal to prevent water loss;

c.      Whether the Class Product can be repaired or replaced so as to be substantially free from defects and work for their intended purposes;

d.      Whether the Class Product performs in accordance with the reasonable expectations of a reasonable customer;

e.      Whether Defendant was unjustly enriched by its course of conduct;

f.      Whether Defendant misrepresented a characteristic or quality of the Class Product;

g.      Whether Defendant concealed and or failed to disclose that the Class Product was defective;

h.      Whether the Class Product was fraudulently and/or deceptively marketed to consumers in violation of California's False Advertising Law;

i.      Whether Defendant committed an unfair, fraudulent, or unlawful act within the meaning of the California Unfair Competition Law.

34.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of the effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

35.     Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical. Furthermore, the amounts at stake for many of the Class members are not great enough to enable them to maintain separate suits against Defendant.

37.     Without a class action, Defendant will likely retain the benefit of their wrongdoing and will continue a course of action, which will result in further damages to Plaintiff and the Class.  Plaintiff does not envision difficulty in the management of this action as a class action.

**FIRST COUNT**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750, *et seq.***
(Individually and on behalf of the California Class)

38.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

39.     Plaintiff brings this cause of action on behalf of himself and on behalf California Class ("Class" for purposes of this Count).

40.     Defendant is a "person" as defined by California Civil Code § 1761(c).

41.     Plaintiff and the California Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased the Class Product for personal, family, or household use.

42.     The sale of the Class Product to Plaintiff and the putative Class Members is a "transaction" as defined by California Civil Code § 1761(e).

43.     Defendant's acts and practices, which were intended to result, and which did result, in the sale of the Class Product, violate § 1770 of the Consumers Legal Remedies Act ("CLRA") for at least the following reasons:

   a. Defendant represented that the Class Product has characteristics, uses or benefits which they do not have;

   b. Defendant advertised their goods with intent to not sell them as advertised;

   c. Defendant represented that their products are of a particular standard, quality, or grade when they are not; and

   d. Defendant represented that their goods have been supplied in accordance with a previous representation when they have not.

44.     By failing to disclose and concealing the defective nature of the Class Product from Plaintiff and the prospective class members, Defendant violated California Civil Code § 1761(a), as it represented that the Class Product has characteristics and benefits that they do not have, and

represented that the Class Product was of a particular standard, quality, or grade when it was of another.  *See* Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

45.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and were not reasonably avoidable by Plaintiff and members of the Class.

46.     Defendant knew that the Class Product suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.  The propensity of the Class Product gasket to prematurely fail, leak water, ghost-flush and fail to flush in accordance with Defendant's representations is inherent in the Class Product from the time it left Defendant's possession but may have not been discovered by putative class members until months, or years, after the purchase.  Indeed, Defendant knew, or should have known, well in advance of Plaintiff's purchase that the Class Product contained inadequately designed gaskets ad/or assemblies which cause the Class Product to consume water in excess of what consumer's expect and contrary to the representations that the Class Product is designed to minimize water consumption yet maintain superior flushing power.

47.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners of the Class Product suffered an ascertainable loss of money, property, and/or value of their Class Product.  Additionally, as a result of the improperly designed and manufactured Class Product, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Product is substantially certain to fail before its expected useful life has run.

48.     Defendant was under a duty to Plaintiff and the California Class Members to disclose the defective nature of the Class Product and/or associated costs because Defendant was in a superior position to know the true state of facts about the propensity of the Class Product to fail to operate as promised and Plaintiff and California Class Members could not reasonably have been expected to learn or discover that their Class Product would not operate in line with Defendant's representations until, and sometimes well after, it failed.

49.     In failing to disclose the defective nature of the Class Product, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

50.     A reasonable consumer would have considered the facts Defendant concealed or did not disclose to Plaintiff and the Class Members to be material in deciding whether to purchase the Class Product or pay less for it.  Had Plaintiff and the Class Members known of the defective nature of the Class Product, they would not have purchased it or would have paid less for it.

51.     Plaintiff and the Class Members are reasonable consumers who do not expect modern toilets advertised as conserving water and maintaining superior flush power to leak and consume water unnecessarily. This is the reasonable and objective consumer expectation relating to toilets advertised in the manner advertised by Defendant.

52.     As a result of Defendant's conduct, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Product experienced and will continue to experience excessive water consumption, ghost-flushing, and failure to exhibit the flushing power promised by Defendant.

53.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.  Had Defendant disclosed the known qualities and characteristics of the Class Product, including its propensity to prematurely fail, Plaintiff and members of the Class would not have been misled into purchasing the Class Product or would have paid significantly less for them.

54.     Plaintiff, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seek injunctive relief prohibiting Defendant from continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2), and such other equitable relief, including restitution of either (1) the full purchase price paid by customers who purchased a Class Product, or (2) a portion of the purchase price paid by customers who purchased a Class Product reflecting the difference in value as compared to a toilet that performs consistent with Defendant's representations.

55.     In addition to other forms of notice as alleged herein, Plaintiff provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail demanding that Defendant correct such violations. If Defendant fails to adequately respond

to the letter within 30 days Plaintiff will also seek actual damages and attorneys' fees as allowed by the CLRA.

## SECOND COUNT
### VIOLATION OF THE FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE § 17500, *et seq.*
(Individually and on behalf of the California Class)

56.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

57.     Plaintiff bring this cause of action on behalf of themselves and on behalf of the California Class ("Class" for purposes of this Count).

58.     Defendant has benefitted from intentionally selling at an unjust profit a defective Class Product at artificially inflated prices due to the concealment of the propensity of the Class Product to consume excess water, ghost flush and/ or fail to flush with the power advertised by Defendant, and Plaintiff and other Class Members overpaid for their Class Product.

59.     Defendant publicly disseminated advertising and promotional material that was designed and intended to convey to the public that the Class Product minimized water consumption, was capable of flushing a bucket of golf balls, and operated as consumers would expect the Class Product to operate.

60.     Defendant was aware, or should have been aware, of the propensity of the Class Product to fail to perform as advertised at the time Plaintiff and Class Members purchased the Class Product.

61.     However, Defendant negligently or intentionally made representations in its advertisements, and, due to issues it was aware of, did not sell a Class Product that conformed to the representations and promises in the publicly disseminated advertisements.

62.     Defendant unjustly received and retained benefits from Plaintiff and the other Class Members.

63.     It is inequitable and unconscionable for Defendant to retain these benefits.

64.     Because Defendant wrongfully concealed its misconduct, Plaintiff and Class Members were not aware of the facts concerning the Class Product and did not benefit from Defendants' misconduct.

65.     Defendant knowingly accepted the unjust benefits of its wrongful conduct.

66.     Defendant had notice of conduct as alleged herein.

67.     As a result of Defendant's misconduct, Plaintiff and the Class Members suffered an injury-in-fact and lost money and/or property in an amount to be proven at trial.

**THIRD COUNT**
**VIOLATION OF THE UNFAIR COMPETITION LAW**
**CAL. CIV. CODE §§ 17200, *et seq.***
(Individually and on behalf of the California Class)

68.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

69.     Plaintiff brings this cause of action on behalf of himself and on behalf of the California Class ("Class" for purposes of this Count).

70.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and lessees of the Class Product suffered an ascertainable loss of money, property, and/or value in connection with the purchase of their Class Product.  Additionally, Plaintiff and members of the California were harmed and suffered actual damages in that the Class Product is substantially certain to fail before its expected useful life has run.

71.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

72.     Plaintiff and members of the California Class are reasonable consumers who do not expect their toilets to prematurely suffer from excessive water consumption, ghost-flushing, and failing to flush with the power advertised by Defendant.

73.     Defendant knew the Class Product suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

74.     In failing to disclose the known qualities and characteristics of the Class Product, Defendant knowingly and/or intentionally concealed material facts and breached its duty not to do so.

75.     Defendant was under a duty to Plaintiff and members of the Class to disclose the propensity of the Class Product to fail prematurely and/or fail to perform as advertised because

Defendant was in a superior position to know the true state of facts about the Class Product and Plaintiff and members of the Class could not reasonably have been expected to learn or discover that the Class Product would fail to perform as Defendant promised.

76.     A reasonable consumer would have considered the facts Defendant concealed or did not disclose to Plaintiff and members of the Class to be important in deciding whether to purchase the Class Product or pay less for it. Had Plaintiff and members of the Class known the facts known to Defendant regarding the Class Product, they would not have purchased it or would have paid less for it.

77.     Defendant continued to conceal the defective nature of the Class Product even after consumers began to report problems. Once Defendant became aware of sufficient reports from consumers regarding issues with the Class Product, Defendant did not alter or modify its affirmative representations or warn consumers, on the product label or insert, that if they experienced elevated water consumption, ghost-flushing, and weak flushing, that they should inspect their toilets or contact Defendant's helpline to allow the consumer to mitigate water waste and prevent further harm.   Defendants continue to cover up and conceal the true nature of the Fuel Pump Defect. Additionally, despite receiving substantial reports of the Class Product failing, Defendant responds to consumers who complain that such failures are a surprise to Defendant and that "It is not very common for these products to have problems right out of the box. As the manufacturer, we are very interested in supplying consumers with a quality product that delivers the expected performance." In so doing, Defendant actively conceals the widespread failure of the Class Product to perform as advertised or expected by consumers.

78.     Defendant's acts, conduct, and practices were fraudulent, in that they constituted business practices and acts that were likely to deceive reasonable members of the public. Defendants' acts, conduct, and practices were fraudulent because they are immoral, unethical, oppressive, unscrupulous, and/or are substantially injurious to consumers.

79.     Defendants' acts, conduct, and practices were unfair in that they constituted business practices and acts the utility of which does not outweigh the harm to consumers.

Defendants' business acts and practices were further unfair in that they offend established public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

80.     A business practice is unlawful if it is forbidden by any law.  Defendants' acts, conduct, and practices were unlawful, in that they constituted violations of the California Consumers Legal Remedies Act and violations of California's False Advertising Law;

81.     By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

82.     Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

83.     As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and members of the Class have suffered and will continue to suffer actual damages.

84.     Defendant had notice of their conduct as alleged herein.

85.     Defendant has been unjustly enriched and should be required to make restitution to Plaintiff and members of the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.  Plaintiff and members of the Classes also seek injunctive relief as deemed appropriate by the Court.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

A.     For an order declaring that this action is properly maintained as a class action and appointing Plaintiff as a representative for the Class, and appointing Plaintiff's counsel as Class counsel;

B.     That Defendant bear the costs of any notice sent to the Class;

C.     For an order awarding Plaintiff and the members of the Class actual damages, restitution, and/or disgorgement;

D.     For an order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

E.     For an order awarding Plaintiff and the members of the Class pre- and post-

judgment interest;

F.      For an order awarding attorneys' fees and costs of suit, including expert's witnesses fees as permitted by law; and

G.      Such other and further relief as this Court may deem just and proper.

## VII.   **JURY TRIAL DEMAND**

Plaintiff demand a trial by jury for all of the claims asserted in this Complaint so triable.

DATED: August 20, 2021                              Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By:  /s/ John J. Nelson

John J. Nelson
501 W. Broadway, Ste. 1260
San Diego, CA 92101
Telephone:  (619) 238-1333
Facsimile:  (619) 238-5425

*Attorneys for Plaintiff*
*and the Putative Classes*

# EXHIBIT A

## AFFIDAVIT OF VENUE

I, Dr. Robert H. Weiss, declare that:

     1.    I have personal knowledge of the facts cited in this declaration and if called as a witness I would competently testify thereto.

     2.    I am the named plaintiff in this case.

     3.    I purchased three American Standard Brand Champion toilets, which are the subject of this case, from a Lowes home improvement store, in Contra Costa County, California as described in the complaint.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing declaration is true and correct, and was executed by me in Walnut Creek, Contra Costa County, California on August 19, 2021.

By: _____

Robert H. Weiss

Declarant